UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-CV-14

LONG JOHN SILVER'S, INC.,                                             PLAINTIFF,

v.                                          **OPINION AND ORDER**

DIWA III, INC.,
DIWA IV, INC.,
DIWA V, INC.,
WAZIR KAISANI,
IQBAL KAISANI,
ASHRAF NATHANI,
LIYAQAT A. AJMERI, and
MEHBOOB A. MALIK,                                                   DEFENDANTS.

\* \* \* \* \* \* \* \* \*

In its Complaint, the Plaintiff, Long John Silver's, Inc., seeks damages against three corporations – Defendants DIWA III, Inc., DIWA IV, Inc., and DIWA V, Inc. (collectively, the "Franchisees") – for breach of franchise agreements and a sublease. The Plaintiff also seeks damages against five individuals – Wazir Kaisani, Iqbal Kaisani, Ashraf Nathani, Liyaqat A. Ajmeri, and Mehboob A. Malik (collectively, the "Guarantors") – for breach of guaranty agreements.

Currently before the Court are three motions. In the first motion under consideration, one of the Guarantors – Mehboob A. Malik – argues that this Court lacks subject matter and personal jurisdiction over the claims against him. (Rec. No. 19). Malik is a Georgia citizen.

In the second motion under consideration, the Plaintiff seeks to amend its Complaint to assert additional allegations against Malik and to add a claim against him individually for breach of one of the franchise agreements. (Rec. No. 26).

In the third motion under consideration, the four Guarantors other than Malik move to dismiss or transfer the claims against them, asserting that this Court is the improper venue. (Rec. No. 21).

For the following reasons, the Court will grant Malik's Motion to Dismiss the claims against him and will deny the other two motions before the Court.

**I.     Facts.**

In its Complaint, the Plaintiff asserts that it grants franchise rights to operate restaurants under the name and trademark "Long John Silver's." (Rec. No. 1, Complaint ¶ 13). It asserts that it is a Delaware corporation with its principal place of business in Louisville, Kentucky. (Rec. No. 1, Complaint ¶ 4). The Plaintiff further asserts that it entered into three franchise agreements, one with each of the three Franchisees.

**A.     The Jimmy Carter Boulevard Franchise Agreement with DIWA III.**

Specifically, on or about September 26, 2000, the Plaintiff entered into a franchise agreement (the "Jimmy Carter Boulevard Franchise Agreement") with DIWA III, pursuant to which it granted DIWA III the right to operate a Long John Silver's restaurant on Jimmy Carter Boulevard in Norcross, Georgia. (Rec. No. 1, Complaint ¶ 13).

The Jimmy Carter Boulevard Franchise Agreement contains a choice-of-law and forum-selection clause which provides the following:

(a)     This Agreement has been accepted by the Company and shall be deemed to have been made at Lexington, Kentucky, and shall be governed and construed under and in accordance with the laws of the Commonwealth of Kentucky, which law shall prevail in the event of any conflict of law.

(b)     Franchisee and the Company agree that any action arising out of or relating to this Agreement (including, without limitation, the offer and sale of the

2

> Franchise), shall be instituted and maintained only in a state or federal court of general jurisdiction in Fayette County, Kentucky, and Franchisee irrevocably submits to the jurisdiction of such court and waives any objection it may have to either the jurisdiction or venue of such court.

(Rec. No. 1, Complaint, Ex. A, Agreement, ¶ 15.02).

On or about the same date, Guarantors Wazir Kaisani, Iqbal Kaisani, and Ashraf Nathani signed personal guaranties by which they personally guarantied DIWA III's obligations under the Jimmy Carter Boulevard Franchise Agreement. (Rec. No. 1, Complaint ¶ 16).

### B.     The Roswell Road Franchise Agreement with DIWA IV.

Later, in December 2000, the Plaintiff entered into a franchise agreement (the "Roswell Road Franchise Agreement") by which it granted DIWA IV the right to operate a Long John Silver's restaurant on Roswell Road in Marietta, Georgia. (Rec. No. 1, Complaint ¶ 17). The Roswell Road Franchise Agreement is not contained in the record but the Plaintiff asserts it is identical to the Jimmy Carter Boulevard Agreement. (Rec. No. 1, Complaint ¶ 17).

The Plaintiff asserts that on September 26, 2000, Guarantors Wazir Kaisani, Iqbal Kaisani, and Ashraf Nathani signed personal guaranties by which they personally guarantied DIWA IV's obligations under the Roswell Road Franchise Agreement. (Rec. No. 1, Complaint ¶ 18). However, the guaranties state they were executed on the same date as the Roswell Road Franchise Agreement. (Rec. No. 1, Complaint, Ex. C).

### C.     The Austell Road Franchise Agreement with DIWA V.

On or about September 26, 2000, the Plaintiff and DIWA V entered into a franchise agreement by which the Plaintiff granted DIWA V the right to operate a Long John Silver's restaurant at Clemson Place, in Lawrenceville, Georgia. (Rec. No. 1, Complaint ¶ 19). The Plaintiff

3

refers to this agreement as the "Austell Road Franchise Agreement."  All five Guarantors signed

personal guaranties by which they personally guarantied DIWA V's obligations under the Austell

Road Franchise Agreement.

There is no dispute that both Franchisee DIWA V and Guarantor Malik are Georgia citizens.

(Rec. No. 1, Complaint, ¶¶ 7, 12).  There is no dispute that Malik was the Treasurer of DIWA V and

owned 13.5 percent of its stock. (Rec. No. 20, Response, p. 2 & Ex. 1, 2).

In the Complaint, the Plaintiff asserts that Malik signed the Austell Road Guaranty on

September 26, 2000, the same date that DIWA V signed the Austell Road Franchise Agreement.

(Rec. No. 1, Complaint ¶ 20).  The signature on the guaranty is not dated.  However, the agreement

recites "the undersigned has executed this Agreement as of the same day and year as the above

Franchise Agreement."  (Rec. No. 1, Complaint, Ex. D, Austell Road Guaranty).  The guaranty also

states it was executed "in consideration of, and as an inducement to, the execution of the Franchise

Agreement with DIWA V, Inc. ('Franchisee') dated September 26, 2000."  However, Malik submits

an affidavit stating that he did not become an owner of DIWA V until March 1, 2001 and also

submits a Sale of Stock Agreement which supports this assertion.  (Rec. No. 25, Reply, Aff. & Ex.

B).

The Austell Road Franchise Agreement contains the same choice-of-law and forum-selection

clause as the Jimmy Carter Boulevard Agreement recited above. (Rec. No. 20, Ex. 3, Agreement ¶

15.02).

### D.    The Sublease.

On or about October 5, 2000, the Plaintiff and DIWA III and DIWA V entered into a sublease

(the "Sublease") pursuant to which DIWA III and DIWA V leased from the Plaintiff the property on

which the Jimmy Carter Boulevard and Austell Road restaurants were located. (Rec. No. 1, Complaint ¶ 21). On about the same date, Guarantors Wazir Kaisani, Iqbal Kaisani, and Ashraf Nathani executed and delivered to the Plaintiff a document titled a "Personal Guaranty" pursuant to which they personally guaranteed the obligations of DIWA III and DIWA V under the Sublease. The personal guaranty signed by the Kaisanis and Nathani states it was made "[i]n order to induce Sublessor to enter into the foregoing Sublease with Sublessee. . . ." (Rec. No. 1, Complaint, Ex. F).

In November 2001, Guarantors Liyaqat A. Ajmeri and Malik also guarantied DIWA V's obligations under the Sublease. (Rec. No. 1, Complaint ¶ 22). The guaranty signed by Malik and Ajmeri states that it was made "[i]n order to induce Sublessor to amend the foregoing Sublease...." (Rec. No. 1, Complaint, Ex. F). The referenced amendment to the Sublease states that Malik and Ajmeri purchased an interested in DIWA V and had agreed to guaranty DIWA V's performance under the Sublease and to amend the Sublease to reference their guaranty. (Rec. No. 1, Complaint, Ex. E, Sublease, Second Amendment).

Malik states that he sold his shares in DIWA V on April 1, 2002. (Rec. No. 25, Reply, Ex. 1, Malik Aff.).

## E.     The Alleged Defaults.

The Plaintiff alleges that the Franchisees have failed to pay royalty and advertising fees as required under the Franchise Agreements. (Rec. No. 1, Complaint ¶ 23). It asserts that it notified DIWA III and DIWA IV of the defaults by letters dated August 3, 2006 and June 13, 2007, respectively and that the Defendants failed to cure the defaults. The Plaintiff asserts that it terminated the Jimmy Carter Boulevard and Roswell Road Franchise Agreements and that these restaurants are now closed. (Rec. No. 1, Complaint ¶¶ 23-30).

5

The Plaintiff asserts that DIWA V closed the Austell Road restaurant on October 8, 2005 in violation of its franchise agreements and that, by letter dated, October 20, 2005, the Plaintiff terminated the Roswell Road Franchise Agreement. (Rec. No. 1, Complaint ¶ 31).

The Plaintiff further asserts that DIWA III and DIWA V failed to pay rent as required under the Sublease and, thus, the Plaintiff has terminated their rights of occupancy. (Rec. No. 1, Complaint ¶ 32). As to the Guarantors, the Plaintiff asserts that they have failed to satisfy the obligations of the Franchisees under the Franchise Agreements and the Sublease. (Rec. No. 1, Complaint ¶ 34).

###### F.      Claims in the Original Complaint.

In Count One of the original Complaint, the Plaintiff asserts breach of contract claims against DIWA III, DIWA IV, and DIWA V asserting that they failed to pay royalties and advertising as required under the Franchise Agreements. The Plaintiff asserts that, as of December 1, 2007, these Defendants owed the Plaintiff approximately $16,664.24 in royalties and $20,920.34 for advertising fees under the Franchise Agreements. (Rec. No. 1, Complaint ¶ 39). In its response to Malik's Motion to Dismiss, the Plaintiff asserts that the portion of this owed by DIWA V is approximately $4,370.36.  (Rec. No. 20, Response at 5).

In Count Two of the Complaint, the Plaintiff asserts a breach of contract claim against DIWA III and DIWA V asserting that they failed to pay rent due under the Sublease.  The Plaintiff asserts that it has suffered damages totaling $134,843.59 as a result of the breach of the Sublease.  (Rec. No. 1, Complaint ¶ 46; Rec. No. 20, Response at 6).  In its response to the Motion to Dismiss, the Plaintiff asserts that the portion owed by DIWA V is $83,958.72. (Rec. No. 20, Response at 6).

In Count Three of the Complaint, the Plaintiff asserts a breach of contract claim against each of the Guarantors asserting that they are liable for the amounts owed by the DIWA companies under

the applicable Franchise Agreements and the Sublease.

Defendant Malik moves to dismiss the claims against him, arguing that this Court lacks subject matter and personal jurisdiction. (Rec. No. 19). The Plaintiff then moved to amend its Complaint to add allegations specific to Malik, primarily in order to bolster its claim of personal jurisdiction against him. (Rec. No. 26). The four Guarantors other than Malik move to dismiss or transfer the action against them for improper venue. (Rec. No. 21).

## II.   Defendant Malik's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Personal Jurisdiction (Rec. No. 19).

The Defendant Malik moves to dismiss the claims against him. As discussed, Malik is a guarantor of DIWA V's obligations under the Austell Road Franchise Agreement. He is also a guarantor of DIWA III and DIWA V's obligations under the Sublease. He argues that the Court does not have subject matter jurisdiction over the claims against him because the amount in controversy does not exceed $75,000. He further argues that the Court does not have personal jurisdiction over him.

### A.   Subject Matter Jurisdiction.

"When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir.2000). "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir.2003).

The Complaint asserts that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. That statute grants this Court jurisdiction over all claims in which the matter in controversy

exceeds $75,000 and is between citizens of different states.  There is no dispute that the required diversity of citizenship exists in this matter.  Malik argues the Court has no subject matter jurisdiction because the amount in controversy does not exceed $75,000.

Malik appears to argue that the amount in controversy on each claim against him must exceed $75,000 in order for the Court to exercise jurisdiction over any claim.  This is incorrect.  In an action such as this, where there are multiple claims against a defendant by a single plaintiff, the amount in controversy on each claim against the defendant can be aggregated for purposes of determining whether the Court has subject matter jurisdiction over the controversy between the parties.  *See Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990) ("It is well established that claims can be aggregated to satisfy the jurisdictional amount requirement."); *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1183 (6th Cir.1975) ("[U]nder 28 U.S.C. § 1332(a) a plaintiff can aggregate his causes of action against a defendant and it is not required that each claim against a defendant exceed [the amount-in-controversy requirement].").

"Where a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith, that is, if it appears, to a legal certainty, that the original claim was really for less than the amount-in-controversy requirement." *Davis v. DCB Financial Corp.*, 259 F.Supp.2d 664, 675 (S.D. Ohio 2003)(citing *Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir.1993)).

In its Complaint, the Plaintiff asserts claims against Malik for breach of two guaranty agreements – his personal guaranty on the Austell Road Franchise Agreement and his personal guaranty on the Sublease. (Rec. No. 1, Complaint ¶¶ 48- 52). The Plaintiff asserts that Malik is jointly and severally liable with DIWA V and the other guarantors for amounts due under the Austell

Road Franchise Agreement.  (Rec. No. 1, Complaint, Prayer for Relief,  ¶1).  The Plaintiff asserts that Malik is liable jointly and severally along with the Franchisees and the Guarantors for the amounts due under the Sublease.  (Rec. No. 1, Complaint, Prayer for Relief,  ¶2).

The Plaintiff asserts in its Complaint that it seeks $134,843.59 in amounts due under the Sublease. (Rec. No. 1, Complaint, ¶ 46).  In its response to Malik's Motion to Dismiss, the Plaintiff asserts that DIWA V is liable for $83,958.72 of the total amount due under the Sublease. Even if the Plaintiff asserts that Malik is only liable for the lesser amount, it is not a legal certainty that the amount in controversy on the breach of the guaranty of the Sublease is less than $75,000.

Accordingly, this Court has subject matter jurisdiction over all claims against Malik.

**B.      Personal Jurisdiction.**

**1)      Standard.**

Malik argues that the Court lacks personal jurisdiction over him because he has not had sufficient contacts with this state. "The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff has the burden of establishing personal jurisdiction. *Id*.  In responding to such a motion, the plaintiff cannot "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*.

The court has three options for deciding a 12(b)(2) motion prior to trial: 1) the court can decide the motion upon the affidavits alone; 2) the court can permit discovery to decide the motion; or 3) the court can conduct an evidentiary hearing to resolve any factual disputes.  *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)(quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).

If all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction, the court need not conduct an evidentiary hearing before dismissing the claim. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997). A prima facie showing means that the plaintiff only has to present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)(quoting *Data Disc, Inc. v. Systems Technology, Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). In determining whether the plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

The determination that the plaintiff has made the prima facie showing of jurisdiction necessary to survive a motion to dismiss does not relieve him from ultimately having to prove jurisdiction by a preponderance of the evidence if the defendant again raises the jurisdictional issue later in the action. *Serras*, 875 F.2d. at 1214 (even if court issues pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean*, 134 F.3d at 1272 (defendant "can raise jurisdictional arguments during the trial as well.  It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

10

If the court conducts an evidentiary hearing to resolve relevant factual disputes, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Dean*, 134 F.3d at 1272. Finally, if there are no factual disputes regarding the jurisdiction issue, then the court need not conduct a hearing but can decide on the pleadings and affidavits whether the plaintiff has established jurisdiction by a preponderance of the evidence. *Id*. (where "the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery. . . plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.").

Neither party in this case has requested discovery on the issue of jurisdiction or an evidentiary hearing to resolve relevant factual disputes.  Thus, to resolve the Defendant's Motion to Dismiss, the Court will determine whether, taking all of the Plaintiff's allegations as true, it has made the necessary prima facie showing of jurisdiction.

  **2)**  **Analysis.**

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)(citation omitted). "The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution."  *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). Thus the single issue presented on a motion to dismiss for lack of personal jurisdiction is whether the jurisdiction sought by the plaintiffs is within the requirements of due process. *Id*. at 543; *National*

*Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982).

The following criteria are used to determine personal jurisdiction in the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"If these criteria are satisfied, jurisdiction is appropriate if maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tobin*, 993 F.2d at 543 (citations and internal quotation marks omitted).

**a)      Allegations in the Original Complaint.**

The Plaintiff's claims against Malik arise from two agreements with the Plaintiff, a Kentucky corporation. The first of those agreements was the personal guaranty by which Malik guaranteed the performance of DIWA V under the Austell Road Franchise Agreement. For purposes of determining whether the Plaintiff has made a prima facie showing of jurisdiction, the Court has assumed as true the Plaintiff's allegations that Malik signed the guaranty on the same date as DIWA V executed the Austell Road Franchise Agreement and that he did so as an inducement to the Plaintiff to enter into the franchise agreement.

The second of the agreements was the personal guaranty by which Malik guarantied the performance of DIWA III and DIWA V under the Sublease. With the Sublease, the Plaintiff leased property to DIWA III and DIWA V upon which the companies were to operate the Jimmy Carter Boulevard and Austell Road restaurants.

12

It is clear that this Court's personal jurisdiction over Malik cannot be established on the basis of the personal guaranties alone. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)("[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). *See, e.g., Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 830 (N.D. Ohio 1996); *Fazoli's Franchising System, LLC v. JBB Investments, LLC*, 2008 WL 4525433, at *3 (E.D. Ky. Sept. 30, 2008).

In *Burger King*, the Court directed courts to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." 471 U.S. at 479. In this case, there is no allegation that there were any negotiations between Malik and the Kentucky corporate plaintiff prior to the parties entering into the guaranty agreements. There is no allegation that Malik ever traveled to Kentucky regarding the two guaranties. Jurisdiction cannot be avoided simply because the defendant was never physically present in the forum state. *Burger King*, 471 U.S. at 476. In this case, however, there is also no allegation that Malik ever had any communications with the Plaintiff in Kentucky regarding the two guaranties.

As to contemplated future consequences and terms of the guaranty agreements, Malik agreed to "render any payment or performance required under Franchise Agreement upon demand if Franchisee fails or refuses punctually to do so." (Rec. No. 1, Ex. D, Austell Road Guaranty). He also agreed that "if Sublessee defaults in the performance of any of its obligation under the Sublease, upon Sublessor's demand, Guarantors will perform Sublessee's obligations under the Sublease." (Rec. No. 1, Complaint, Ex. F). Malik's guaranty of the franchisee's obligations continued throughout the 15-year term of the Franchise Agreement. Likewise, Malik's guaranty of DIWA

13

V's obligations under the Sublease continued throughout its 19-year term.

Presumably, these obligations could require Malik to make payments to the Plaintiff in Kentucky. Nevertheless, the agreements did not require continuing payments by Malik to Kentucky. They only required that Malik make payments if DIWA V failed to do so. It was entirely possible under the terms of the agreements that Malik would never have any contact with Kentucky after signing the guaranties. In fact, that appears to have been the case. Going into the agreements, the parties did not contemplate regular contacts between Malik and the Kentucky corporate plaintiff. Instead any contact between Malik and Kentucky would be random and would occur only if DIWA V failed to perform.

In support of jurisdiction, the Plaintiff cites *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982). In that case, the Sixth Circuit determined that a Kentucky court could exercise jurisdiction over non-resident guarantors of a franchisee. In accordance with *Burger King*, however, the court did not find jurisdiction over any guarantor simply because the guarantor had entered into a guaranty agreement with a Kentucky corporation.

Instead, the court looked to each guarantor to determine what additional contacts each had with Kentucky that would justify submitting him to the jurisdiction of Kentucky courts. Central to the court's finding of jurisdiction with regard to each of the guarantors was the fact that the debtor corporation whose debts were guarantied was a Kentucky corporation.

The court had no trouble finding personal jurisdiction with regard to two of the individual defendants. One had bought a home in Kentucky and lived there for about a year to serve as general manager and secretary-treasurer of the Kentucky debtor corporation. *Id*. at 1137. One had served as president of the Kentucky debtor corporation and traveled to Kentucky about once a month to

14

oversee the company. *Id*. The Sixth Circuit also determined that the Kentucky court had jurisdiction over one of the individual defendants who was a shareholder and vice-president of the Kentucky debtor corporation and had been assigned a security interest in the Kentucky assets of the Kentucky debtor corporation that was filed in Kentucky. *Id*.

Like Malik, however, one of the guarantors had never set foot in Kentucky and her only relationship to the state was signing the guaranty agreement and her ownership interest in the Kentucky debtor corporation. *Id*. Nevertheless, the court determined that, "in signing [the guarantors] risked their names and financial worth to aid in the establishment of a Kentucky venture in which they had a property interest. . . It is our opinion that the guaranties, when signed by a person with an economic interest in the corporation," furnished the minimum contacts necessary for personal jurisdiction. *Id.*

With regard to each of the guarantors, the court determined they met the first prong of the jurisdiction test, or had purposefully availed themselves of the privilege of acting in the forum state, stating the following:

> The defendants voluntarily signed the guaranties, without which credit would not have been furnished. The guaranty agreements showed clearly that the business the guarantors were assisting in creating was to be located in Kentucky. . . it is without question that all guarantors. . . knew that Kentucky was the chosen site. . . Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of "conduct and connection with the forum State" that makes it reasonable to "anticipate being haled into court there" when the underlying contract is breached.

*Id*. at 1138.

The court continued:

> The guarantors, as owners of [the debtor corporation], freely and intentionally chose to locate their corporation in Kentucky. To ensure the success of their enterprise, they voluntarily signed personal guaranties that were a vital factor in [the debtor

15

corporation's] establishment. By virtue of the [debtor corporation's] location in the Commonwealth, the business operations set in motion by defendants had a realistic impact on the commerce of Kentucky. *See Southern Machine, supra*, at 382. It is the state where the company was headquartered and where its products were sold. As the home of defendant [debtor corporation] Kentucky was a reasonable and logical place for suit to be brought against all defendants. Defendants "cannot complain if along with the profits from the (Kentucky) market (they) must also accept the process from the (Kentucky) courts." *Southern Machine*, *supra*, at 386.

*Id*.

In this action, of course, the debtor company is located in Georgia.

In another case relied on by the Plaintiff, *Perry v. Central Bank & Trust Co.*, 812 S.W.2d 166 (Ky. App. 1991), the Kentucky Court of Appeals determined that a Kentucky court had jurisdiction over a guarantor who was a resident of Virginia. In that case, the guarantor agreed to be liable for the debt of his daughter and son-law on a bank loan. *Id*. at 167.

The court determined that the guarantor caused a consequence in Kentucky because the money would not have been loaned to the daughter and son-in-law in Kentucky if not for the guaranty. *Id*. at 169. Further, the guaranty provided that it would be governed by Kentucky law, putting the guarantor "on notice that he could expect any legal ramifications to be dealt with in Kentucky." *Id*. The court also determined that personal jurisdiction in Kentucky was reasonable because the guarantor knew that the daughter and son-in-law were going to use the proceeds from the loan to acquire an interest in a business located in Kentucky. *Id.* Further, the guarantor knew that if the business venture failed, he would be looked to for payment. Thus, the guarantor had a stake in the success of the Kentucky business. *Id*.

It appears that, in *Perry*, the debtors – the son-in-law and daughter – were Kentucky residents, at least at the time the guaranty was signed. In this respect, the case is similar to *National*

*Can*.  Further, in both *Perry* and *National Can*, the courts noted that the guaranty would benefit a

Kentucky business.  Also relevant to the court's analysis in *Perry*, the guaranty provided that it was

to be governed by Kentucky law.  In this case, while the franchise agreement provided that it would

be interpreted under Kentucky law, Malik was not a party to the franchise agreement.  Neither of the

personal guaranties he signed contained any such provision.

        The Plaintiff cites *Intercargo Insurance Company v. B.W. Farrell, Inc.*, 89 S.W.3d 422 (Ky.

Ct. App. 2002) in which the Kentucky Court of Appeals held that a Kentucky court could exercise

jurisdiction over two out-of-state individuals who agreed to indemnify the plaintiff bond company

for any claims against a performance bond issued by the plaintiff.  The principals on the performance

bond were two companies in which the indemnifiers had an ownership interest. *Id*. at 424.

        However, one of the companies which was a principal on the bond had an office in Kentucky

and was authorized to do business in the state.  *Id*.  One of the individual out-of-state indemnifiers

was the vice president and/or secretary of that company and had signed the indemnity agreement in

Kentucky. *Id*. at 427.  His wife was the other individual out-of-state indemnifier.  Citing *National

Can* and *Perry*, the court held that the wife's economic interest in the corporation with a Kentucky

office permitted the Kentucky court to exercise jurisdiction over the wife. *Id*. at 427-28.

        Thus, again, the debtor company had an office in Kentucky.  In this case, DIWA V does not

have any offices in Kentucky.

        The Plaintiff also cites *Inter-City Products Corp. v. Willey*, 149 F.R.D. 563 (M.D. Tenn.

1993), a case in which a district court in Tennessee relied on *National Can* to hold that it could

exercise jurisdiction over the out-of state guarantors of a Florida corporation's debts.   The court

noted that "the only alleged contact between the [guarantors] and Tennessee is the personal

17

guaranty." *Id*. at 573. Accordingly, the court determined that "the issue before the Court is whether their entering into this guaranty is a sufficient basis for the assertion of personal jurisdiction." *Id*.

The court recognized that, in *National Can*, the Sixth Circuit found the guarantors subject to personal jurisdiction in Kentucky because "the guaranteed company was located in Kentucky." *Id*. at 574. Without addressing the fact that, in the case before it, the debtor corporation was not located in Tennessee, the Tennessee court held it had jurisdiction over the out-of-state guarantors. Thus, it appears that the court ultimately determined that entering into the guaranty with a resident was sufficient by itself to establish jurisdiction. *Id*. at 573.

Given *Burger King* and *National Can*, the court finds more persuasive a recent case in this district very similar to the one before this Court. In *Fazoli's Franchising Systems, L.L.C. v. JBB Investments, LLC*, 2008 WL 4525433 (E.D.Ky. 2006), the plaintiff, Fazoli's, was headquartered in Kentucky and a franchisor of Italian restaurants. *Id*. at *1. Fazoli's entered into franchise agreements with Pasta Concepts, Inc. which operated Fazoli's restaurants in Georgia, Arkansas and South Carolina. *Id*. The defendants were the out-of-state guarantors of Pasta Concept's performance under the franchise agreements. *Id*.

Like the franchise agreements at issue in this case, the Fazoli's franchise agreements contained choice-of-law clauses providing that the agreements would be governed under Kentucky law and forum-selection clauses pursuant to which the franchisee submitted to the jurisdiction of Kentucky courts. *Id*. The guaranties, however, did not contain choice-of-law or forum-selection clauses. *Id*. at *2.

The court determined that the guarantor's contacts with Kentucky involved entering into guaranty agreements with a Kentucky-based corporation. *Id*. at *4. The court noted that the

18

guaranties guarantied the franchisees' performance with regards to restaurants to be located in states other than Kentucky.  *Id*. at *4.  The court noted that there was no allegation that the course of dealing between the parties involved any travel to Kentucky.  *Id.*  The court then determined that the defendants had not purposefully availed themselves of the privilege of transacting business in Kentucky.  *Id*.

The court reasoned that a contract with a Kentucky company was not enough to justify jurisdiction in Kentucky and that "there was *no* additional contact with Kentucky beyond the agreement with a Kentucky-based corporation."  *Id*.  The court noted that the "only connection that Defendants have with Kentucky is the fact that plaintiff Fazoli's, a party to the Guaranties, is based in Kentucky.  All other acts or omissions involved in this case occurred in Arkansas or in the other states in which the franchises were located." *Id*.

In this case also, Malik's sole contacts with Kentucky regarding the claims at issue in this action consist of entering into two agreements with a Kentucky corporation.  These contacts alone are not sufficient to establish personal jurisdiction.

The Plaintiff argues that Malik personally signed two other contracts  in addition to the personal guaranties which are part of the Austell Road Franchise Agreement. The first of these agreements is a "Designated Agent Addendum," by which the Plaintiff and DIWA V agreed that Defendant Waizir Kaisani would be the designated agent for communications between DIWA V and the Plaintiff.(Rec. No. 20, Response, Ex. 2). Though the agreement was with DIWA V, it purports to bear the signatures of each of DIWA V's owners.  The second of these agreements is a "Confidentiality and Noncompetition Agreement" executed on November 28, 2001 by which Malik agreed to be personally bound by the non-compete and confidentiality covenants contained in the

19

Austell Road Franchise Agreement. (Rec. No. 20, Ex. 4).

Malik states that he sold his shares of stock in DIWA V on April 1, 2002 and that the signature on the Designated Agent Addendum is not his. (Rec. No. 25, Reply Ex. A, Malik Aff.) For purposes of determining whether Long John Silver's has made a prima facie case of jurisdiction, the Court has assumed the signature is Malik's. The Confidentiality and Noncompetition Agreement states that it was executed in Lexington, Kentucky. There is no dispute, however, that Malik was never in Kentucky, at least with regards to the matters at issue in this action.

Again, however, entering into agreements with a Kentucky corporation does not by itself establish personal jurisdiction. The agreements do not establish any future contacts between Malik and Kentucky. In fact, the Designated Agent Addendum formally establishes that the Plaintiff would communicate with Wazir A. Kaisani regarding the DIWA V franchise. More importantly, the Plaintiff's cause of action does not arise from the Designated Agent Addendum or the Confidentiality and Noncompetition Agreement.

For all these reasons, this Court cannot exercise personal jurisdiction over Malik based solely on the allegations contained in the original Complaint.

      **b)**      **The Forum Selection Clause.**

The Plaintiff also argues that the Court should find jurisdiction over Malik based on the forum selection clause in the Austell Road Franchise Agreement which provides that:

> any action arising out of or relating to this Agreement (including, without limitation, the offer and sale of the Franchise), shall be instituted and maintained only in a state or federal court of general jurisdiction in Fayette County, Kentucky, and Franchisee irrevocably submits to the jurisdiction of such court and waives any objection it may have to either the jurisdiction or venue of such court.

(Rec. No. 20, Response, Ex. 3, Agreement, ¶ 15.02). Malik was not a party to that agreement.

Further, the guaranty signed by Malik does not contain a forum selection clause.  Nevertheless, the Plaintiff cites *United Airlines, Inc. v. ALG, Inc.*, 873 F.Supp. 147, 151 (N.D. Ill. 1995); *Ameritrust Co. Nat Ass'n v. Chanslor*, 803 F.Supp. 893, 895-96 (S.D. N.Y. 1992); and *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456, 460-61(E.D.N.Y. 1986) in support of its argument that the Court can exercise jurisdiction over Malik based on the forum selection clause in the franchise agreement.

In *United Airlines*, the plaintiff sued a sublessee and the sublessee's guarantor for breach of the sublease and guaranty agreement. The sublease contained a clause by which the sublessee agreed to submit itself to the jurisdiction of the federal courts in Illinois. 873 F.Supp. at 151. The court held that, "[g]iven the unconditional nature of the guarantee, and [the guarantor's] knowledge of the subsequent Sublease," the guarantor had waived any objection to personal jurisdiction. *Id.* at 151-52. The court also determined that the guarantor's "guarantee of the obligation that specifically invoked Illinois law and would be litigated in the courts of Illinois must constitute sufficient contacts to justify an assertion of jurisdiction." *Id.* at 152.

In *Ameritrust*, a creditor sued the guarantor of its debtor.  The notes signed by the debtor contained a forum-selection clause requiring that any disputes be litigated in New York and a choice-of-law clause providing that the notes were governed by New York law.  803 F.Supp. at 895.  The guaranty did not have a forum-selection clause but provided that the guarantor unconditionally guarantied the "full payment, performance and observance of all obligations, agreements, representations, and warranties of the" debtor.  *Id* at 895.  The court determined that, "[s]ince one of the [debtor's] obligations under [the debtor's] agreement[s] was its consent to New York jurisdiction, the Guarantor's unlimited assumption of the [debtor's] obligations assumes this consent as well." *Id.*  at 895-96.

The court further noted that, even if the guaranty language did not explicitly bind the guarantor to consent to New York jurisdiction, under New York law, because the guaranty and the notes were "executed together, they should be interpreted the same way." *Id*. at 896.   Finally, the court noted that the guaranty was a form document and the notes were specifically prepared for the transaction and that, under New York law, the specific terms control and clarify the more general terms of the guaranty. *Id*.

In *Lemme v. Wine of Japan Import, Inc.*, a wine distributor sued a wine importer and the importer's guarantor.  The plaintiff argued that the New York court had jurisdiction over the guarantor because the underlying contract between the plaintiff and the importer contained a forum-selection clause and because the guarantor guarantied the importer's "performance of each and every term and condition of" the underlying agreement. 631 F.Supp. at 460-61.  The court determined that the guarantor "undertook to guarantee more than simply the delivery of the products ordered by the plaintiff; it adopted as its own each and every term and condition of the Agreement. This emphatic expression of intent to assume every obligation under the contract necessarily included the consent-to-jurisdiction clause." *Id*. at 461.

The court distinguished the case before it and the situation in *Pal Pools, Inc. v. Billiot Bros., Inc.*, 394 N.Y.S.2d 280 (N.Y. App. Div. 1977), in which the New York state court concluded that, because the underlying agreement contained a forum-selection clause but the guaranty contained only a choice-of-law clause, "it was reasonable to conclude that the parties had carefully distinguished between the two documents, intending only that the guarantors be governed by the substantive law of New York, not that they be subject to its jurisdiction as well." *Id*.

In *Fazoli's*, however, the case from the Eastern District of Kentucky discussed above, the

court determined that it did not have jurisdiction over the out-of-state guarantor of an out-of-state

franchisee's obligations under  franchise agreements with a Kentucky corporation despite the fact

that the franchise agreements contained forum-selection clauses.  The guarantors "personally and

unconditionally guarant[ied]. . . that Franchisee shall punctually  pay and perform each and every

undertaking, agreement and covenant set forth in the Franchise Agreement." 2008 WL 4525433, at

* 1. The court determined that the guarantors did not waive an objection to personal jurisdiction,

noting that in the guaranties, the defendants affirmatively waived certain rights but did not waive any

objection to Kentucky jurisdiction.  *Id*. at *6.

   In another case in this circuit, *Gelato Di Roma Intern., Inc. v. Gornall*, 2006 WL 2433454

(E.D. Mich. 2006), the court held that out-of-state guarantors were not bound by a forum-selection

clause contained in the underlying agreement. In that case, the franchisor, a Michigan corporation,

entered into a promissory note with an out-of-state franchisee which contained a forum-selection

clause by which the franchisee consented to personal jurisdiction in Michigan.  *Id*. at 2. The guaranty

contained a Michigan choice-of-law clause but no forum-selection clause.  *Id*. at * 4.  The court

found this "was an indication that the guarantee did not incorporate the forum selection clause." *Id*.

The court further determined that the promissory note and guaranty could not be construed as one

document because the guarantors were not parties to the promissory note.  *Id*. at *5.  Thus, the

documents were to be construed as separate legal documents with different provisions.  *Id*.

   These cases make clear that, in determining whether a guarantor is bound by a forum

selection clause contained in the underlying agreement, the court must review both the guaranty and

underlying agreements to determine the parties' intent.  *See, e.g., Quebecor World (USA) v. Harsha

Associates, L.L.C.*, 455 F.Supp.2d 236, 238 (W.D.N.Y. 2006) (determining, after a review of the case

law, that "where a guaranty does not contain a forum-selection clause, the question of whether the guarantor is subject to a forum-selection clause in the underlying contract depends on how closely related the contract and the guaranty are"); *Fazoli's*, 2008 WL 4525433, at * 5 (in determining whether guarantors are bound by a forum-selection clause in the underlying agreement, a court must "carefully consider the language of the guaranty document alongside the underlying contract.").

The first issue in determining whether Malik consented to Kentucky jurisdiction is whether the guaranty and the underlying Austell Road Franchise Agreement should be construed as one legal document. Under Kentucky law, "two or more written instruments between the same parties, executed simultaneously, referring to each other, and concerning a single transaction, must be construed together as constituting the contract between the parties." *Fidelity & Columbia Trust Co. v. Schmidt*, 53 S.W.2d 714, 718 (Ky. 1932). In this case, Malik is not a party to the Austell Road Franchise Agreement. Thus, the guaranty and the franchise agreement must be construed as separate legal documents with separate legal provisions.

 With the guaranty, Malik guarantied that DIWA V would "punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement" and agreed that he would "render any payment or performance required under Franchise Agreement upon demand if Franchisee fails or refuses punctually to do so." (Rec. No. 20, Ex. 5). Accordingly, Malik agreed to be bound by every provision of the Franchise Agreement that required a payment or performance by DIWA V.

The forum-selection clause in the franchise agreement requires a performance by DIWA V, i.e., that it submit to the jurisdiction of Kentucky courts with regard to any claim arising out of or relating to the Franchise Agreement. Thus, the guaranty could be read to require that Malik submit

to the jurisdiction of Kentucky courts with regard to any claim arising out of or relating to the franchise agreement. However, even under this reading, Malik's obligation to consent to this Court's jurisdiction only kicks in if DIWA V has refused to do so. DIWA V has consented to this Court's jurisdiction over this action.

Accordingly, the Court cannot exercise jurisdiction over Malik based on the forum-selection clause contained in the Austell Road Franchise Agreement.

c)      **Additional Allegations.**

With its response to Malik's Motion to Dismiss, the Plaintiff makes additional factual assertions that are not contained in the original Complaint. Specifically, the Plaintiff asserts that Malik had additional contacts with Kentucky with regard to the DIWA IV franchise and the Roswell Road Franchise Agreement.

The Plaintiff submits the affidavit of Cynthia Mays, its Franchise Administrator. (Rec. No. 20, Response, Ex. 7, Mays Aff.). Mays asserts that in January or February 2007 Malik sent change-of-address forms to her indicating that his new address was the address of the Roswell Road restaurant and that he requested that she send to the Roswell Road restaurant the coupon booklets by which DIWA IV paid royalties and advertising fees. Mays asserts that she called Malik on February 16, 2007 and he informed her he had purchased the Roswell Road restaurant three years ago.

The Plaintiff also attaches the affidavit of Donna Hunter, its accounts receivable analyst, who states that, beginning approximately August 10, 2004, Afshan Investment, Inc. began paying the Plaintiff the royalty and advertising payments due under the Roswell Road Franchise Agreement. (Rec. No. 20, Response, Ex. 8, Hunter Aff.). Hunter further states that Afshan sent the Plaintiff at

least 11 additional royalty and advertising checks due on the Roswell Road restaurant between October 2004 and March 2007. The Plaintiff asserts that the checks appear to be signed by Malik. The Plaintiff attaches the July 19, 2007 and August 23, 2007 letters that it sent both Kaisani and Malik following DIWA IV's default under the Roswell Road Franchise Agreement, notifying them of the termination of the agreement effective July 19, 2007.  (Rec. No. 20, Response, Ex. 10, 11).

The Plaintiff also submits a filing with the Georgia Secretary of State's office indicating that Malik was the incorporator of  Afshan Investment, Inc. and the sole member of its Board of Directors. (Rec. No. 20, Response, Ex. 9).

The problem, however, is that, in its original Complaint, the Plaintiff has not asserted any claims against Malik with regard to the Roswell Road restaurant.  Again, the sole claims against Malik in the original Complaint are for breach of the guaranties of the Austell Road Franchise Agreement and the Sublease.  Even if the Plaintiff has alleged that Malik had contact with Kentucky with regard to the Roswell Road restaurant, the Plaintiff's claims against Malik do not arise from those contacts.

Accordingly, the Court cannot exercise jurisdiction over Malik based on the allegations made by the Plaintiff in its response to Malik's Motion to Dismiss that were not contained in the original Complaint.

For all these reasons, Malik's Motion to Dismiss for lack of personal jurisdiction must be granted.

## II.    Plaintiff's Motion to Amend Complaint. (Rec. No. 26).

After Malik filed his Motion to Dismiss, the Plaintiff filed a motion to amend its Complaint pursuant to Federal Rule Civil Procedure 15(a) primarily in order to assert the additional allegations

against Malik regarding the Roswell Road restaurant contained in its response to Malik's Motion to Dismiss that are recited above. The Plaintiff also asserts a new claim for breach of the Roswell Road Franchise Agreement against Malik. (Rec. No. 26, Ex. 1, Amended Complaint, Count I, Breach of Contract – Franchise Agreements, ¶ 41, Prayer for Relief, ¶ 2).  It asks for judgment against Malik, "as the purported owner and operator of the Roswell Road Restaurant, jointly and severally with the DIWA IV guarantors, for the amounts owed under the Roswell Road Franchise Agreement."  (Rec. No. 26, Ex.1, Amended Complaint, Prayer for Relief ¶ 2).

Under Federal Rule of Civil Procedure 15(a), a district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir.2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir.1993)).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true."  *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).  Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief,  in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (internal citations omitted).  In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to  nudge his claim "across the line from conceivable to plausible." *Id*. at 1974.

Malik objects to the proposed amendment as futile.  He argues that the proposed claim against him for breach of the Roswell Road Franchise Agreement could not survive a motion to dismiss because he was not a party to that contract and was not even a guarantor of that contract.

The Plaintiff argues that it has pleaded sufficient facts to support a claim for breach of the Roswell Road Franchise Agreement against Malik. Specifically, the Plaintiff asserts that the following facts support the claim: Afshan Investments paid some of the royalty and advertising fees due under the Roswell Road Franchise Agreement; Afshan's checks were signed by Malik; Malik incorporated Afshan and was the sole member of its board of directors; and Malik told the Plaintiff that he purchased the Roswell Road Restaurant some time in 2004.

Even if it can be inferred from these additional allegations that DIWA IV assigned its rights and obligations under the Roswell Road Franchise Agreement to Afshan Investments, the allegations do not support a claim for breach of the Roswell Road Franchise Agreement against Malik individually.

 The Plaintiff argues that the additional allegations may support claims for breach of an oral or implied agreement against Malik; for unjust enrichment against Malik; and for breach of contract as a third party beneficiary against Malik. An obvious problem, however, is that the Plaintiff has not

28

asserted any of these claims in the tendered Amended Complaint.   The tendered Amended Complaint asserts that Malik has "failed and refused to pay the amounts owed to [the Plaintiff] under the Roswell Road Franchise Agreement."  (Rec. No. 26, Tendered Complaint, ¶ 41). There is no dispute that Malik was not a party to the Roswell Road Franchise Agreement.

     The Plaintiff states it does not yet have all the details of the various relationships and agreements between the co-defendants and Afshan and that it will be necessary to conduct discovery on this issue in order to support its claim against Malik for breach of the Roswell Road Franchise Agreement.  In order to survive a motion to dismiss, however, the Plaintiff must at least allege facts that make its claim against Malik for breach of the Roswell Road Franchise Agreement plausible. The Plaintiff does not allege that Malik was a party to the Roswell Road Franchise Agreement. Without such an allegation, the claim against Malik for breach of that agreement would not survive a motion to dismiss.

     Accordingly, the Plaintiff's Motion to Amend its Complaint will be denied as futile.

### III.    The Remaining Guarantors' Motion to Dismiss for Improper Venue (Rec. No. 21).

     After Malik moved to dismiss this matter against him for lack of jurisdiction, the four other individual Guarantors also moved to dismiss the action against them.  These four Guarantors do not, however, move to dismiss the action against them for lack of personal jurisdiction.  Instead, they argue that this Court is an improper venue for this action.  In their motion to dismiss, the Guarantors move for an order of transfer or dismissal for improper venue citing specifically Federal Rule of Civil Procedure 12(b)(3)(providing for motion to dismiss for improper venue), 28 U.S.C. § 1406(a)(requiring court to transfer or dismiss action for improper venue), and 28 U.S.C. § 1391(a)(stating which district is proper venue in civil diversity cases). (Rec. No. 21, Motion at 1).

### A.     The Burden.

An initial issue, not addressed by either party, is which party has the burden on a 12(b)(3) motion. This is important in this action as will become clear below. The Sixth Circuit has not addressed which party has the burden on a motion to dismiss for improper venue in a civil case and district courts within this circuit disagree on the issue.  *See, e.g., Wax v. Stein World, L.L.C.*, 2008 WL 2227350 at * 1 (N.D. Ohio 2008) ("the plaintiff bears the burden of proving that venue is proper"); *Kelly Services v. Eidnes*, 530 F.Supp.2d 940, 948 (E.D. Mich. 2008)(movant bears the burden of establishing that venue is improper). District courts in other circuits also disagree on the issue.  *See, e.g., Wealth Rescue Strategies, Inc. v. Thompson*, 2008 WL 4447040 at *1 (D. Ariz. 2008)("the burden is on the plaintiff to establish that venue is proper"); *Stoner v. Arts Uniq., Inc.*, 2005 WL 2416124, at * 3 (M.D. Pa. 2005)("Defendant bears the burden of establishing improper venue.").

Authorities on federal practice are similarly conflicted.  Moore's Federal Practice directs that when a defendant objects to venue, "courts should treat the venue question as an affirmative defense. Therefore, the defendant has the burden of establishing that venue is improper." 17 James Wm. Moore *et al.*, Moore's Federal Practice § 110.01[5][c].  It concludes that courts placing the burden on the plaintiff incorrectly rely on "an analogy to subject matter jurisdiction." In contrast, Wright & Miller's Federal Practice and Procedure states "the position that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue."  14 D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3826.

In *Myers v. American Dental Ass'n*, 695 F.2d 716 (3rd Cir. 1982), the Third Circuit assigned

the burden to the movant.  The court explained that, because "federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears."  *Id*. at 724.  Thus, in a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing jurisdiction. "By contrast, a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense. . . It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." *Id*.   The court recognized that some courts hold that the burden is on the plaintiff to establish proper venue but concluded that "these cases confuse jurisdiction with venue or offer no reasons to support their position." *Id*.

In *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2nd Cir. 2005), on the other hand, the Second Circuit assigned the plaintiff the burden of establishing venue.  The court specifically decided to adopt the same standard of review for 12(b)(2) dismissals for lack of personal jurisdiction as for 12(b)(3) dismissals for improper venue:

> If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]. But if the court holds an evidentiary hearing ... the plaintiff must demonstrate [venue] by a preponderance of the evidence.

*Id*. at 355 (citations omitted).

Venue and jurisdiction, however, are different concepts.  Jurisdiction is the court's authority to hear a case. Venue deals with "simply where the case may be tried."  *Myers*, 695 F.2d at 724. Subject matter and personal jurisdiction limit the power of federal courts. Venue in a civil action, on the other hand, is a statutory requirement and is a privilege given to the defendant primarily as a matter of convenience. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939); *Olberding v. Illinois Cent. R.*

*Co.*, 346 U.S. 338, 340 (1953)(venue statute is "not a qualification upon the power of the court to adjudicate, but a limitation designed for the convenience of litigants, and, as such, may be waived by them."). *See also Holder Corp. v. Main Street Distrib., Inc.*, 1987 WL 14339, at *4 (D.Ariz. Jan.16, 1987) (citing *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947, 949-52 (1st Cir.1984)).

In *Johnson*, the First Circuit distinguished venue and jurisdiction as follows:

> Venue, though a statutory requirement, is based on Congress' decision concerning where a case *should* be heard. It is a privilege given to the defendant primarily as a matter of convenience and is not based on an inherent power of a particular court over the parties. *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). In general, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84, 99 S.Ct. 2710, 2716-17, 61 L.Ed.2d 464 (1979). Longarm statutes, and extraterritorial service through the concept of minimum contacts, on the other hand, allow a defendant to be haled into a distant court to allow a state to protect *its* interests, *see Hustler*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and the interests of *plaintiffs*, *see McGee* [*v. International Life Ins. Co.*, 355 U.S. [220,] 222, 78 S.Ct. [199,] 200 [(1957)], to the extent that doing so is not so unfair as to deny a defendant due process of law.

743 F.2d at 951.

Given these distinctions between venue and personal jurisdiction, the Court will not apply the same procedure to resolve motions to dismiss for venue and for lack of jurisdiction. A motion to dismiss for personal jurisdiction challenges the authority of the court chosen by the plaintiff to preside over the claim. Thus, the burden is on the plaintiff to establish jurisdiction. A motion to dismiss for improper venue, in effect, challenges whether the forum is a fair one for the defendant as established by the federal venue statute. Thus, the defendant should have the burden of proving that the forum chosen by the plaintiff is improper.

**B.    Analysis.**

The Guarantors argue that 28 U.S.C. § 1391 does not authorize venue in this Court. That

statute provides that, in a civil action such as this where jurisdiction is founded on diversity of citizenship, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In their motion, the Guarantors argue that this Court is an improper venue because "[a]ll of the Defendants do not reside in this district, a substantial portion of the activities giving rise to the claim did not occur in this district, the property that is the subject of this action is not located in this district, and the Defendants were not subject to personal jurisdiction in this district at the time the action was commenced." (Rec. No. 21, Motion at 1).

In their memorandum supporting their motion to dismiss, however, the Guarantors do not further address subsections (1) or (2) of Section 1391(a). Instead they address only subsection (3) and argue that venue in this district is improper because they are not subject to personal jurisdiction in this district. (Rec. No. 21, Motion at 1-2). In its response to the motion, the Plaintiff follows suit, addressing only subsection (3) of the statute.

In order for this Court to dismiss or transfer this matter for improper venue, however, the Court must find that *none* of the three provisions of Section 1391 authorizes this district as a proper venue for this action. Thus, this Court must analyze subsections (1) and (2). In fact, in order to resolve the issue that *is* addressed by the parties – whether this district is a proper venue under subsection (3) – the Court must first analyze subsections (1) and (2). This is because subsection (3) is a "catchall" or "fallback" provision, authorizing venue "when, and only when, there is no district

in which a case otherwise could be brought in accordance with the venue statute." *Kolodziej v. Gosciak*, 2008 WL 786326 at * 7 (W.D. Mich. March 20, 2008)(quoting 14D Charles Alan Wright, Arthur J. Miller, and Edward H. Cooper, Federal Practice & Procedure § 3806.2 at 233); 28 U.S.C. § 1391(a)(3)(authorizing venue in any judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, only *"if there is no district in which the action may otherwise be brought."* 28 U.S.C. § 1391(a)(3)(emphasis added)).

Subsection (1) of Section 1391(a) clearly does not authorize venue in this district and likely does not authorize venue in any district. This is because it appears that one of the Defendants named in this action resides in Florida and the remaining defendants reside in Georgia. Thus, all the Defendants do not reside in the same state.

Under Subsection(2) of Section 1391(a), venue is proper in any judicial district where a substantial part of the events or omissions giving rise to the Plaintiff's claims arose. Under this provision, venue may be proper in more than one district. The issue is not which forum is the "best" venue, but whether the district has a "substantial" connection to plaintiffs' claims, even if other districts have greater contacts. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998).

It is clear that subsection (2) authorizes venue in the Northern District Court in Georgia, the district where the restaurants were located, where four of the Guarantors reside, and where, according to the Guarantors, "[a]ll of the businesses, records and properties concerning this suit are located. . .as well as all potential witnesses." (Rec.No. 21, Mem. at 6). Subsection 2 may also authorize venue where payments were to be made to the Plaintiff. Neither party addresses this legal issue. Further, there is no evidence in the record  regarding where the Guarantors were required to mail payments. The Complaint states that the Plaintiff's principal place of business is in Louisville,

Kentucky but at some point in the relevant time period the Plaintiff was located in Lexington, Kentucky. (Rec. No. 27, Response at 3 n.5). Thus, venue may be proper in either the Eastern or Western Districts of Kentucky under subsection (2).

Because neither party addresses this provision, this Court cannot resolve whether the Eastern District of Kentucky is a proper venue under subsection (2). But because the burden is on the Guarantors to prove that this district is in improper forum for the Plaintiff's action and because it appears that the Eastern District of Kentucky might be a proper forum, the Court will deny the motion to dismiss for improper venue.

Further, because it is clear that subsection 2 authorizes venue in at least the Northern District of Georgia, subsection 3 of Section 1391 is not applicable.

For all these reasons, the Motion to Dismiss or Transfer for Improper Venue will be denied.

## IV.    CONCLUSION.

For all these reasons, the Court hereby ORDERS the following:

1) Defendant Malik's Motion to Dismiss for Lack of Personal Jurisdiction (Rec. No. 19) is GRANTED and the claims against Malik are hereby DISMISSED without prejudice;

2) The Plaintiff's Motion to Amend Complaint (Rec. No. 26) is DENIED; and

3) The Motion to Dismiss or Transfer for Improper Venue (Rec. No. 21) filed by Wazir Kaisani, Iqbal Kaisani, Ashraf Nathani, and Liyaqat A. Ajmeri is DENIED.

Dated this 15th day of January, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**